Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 W. Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>BRET F. MANESS,<br><br>    Defendant. | NO. 3:03-cr-0077-RRB<br><br>**BRET MANESS'S REQUEST FOR RE-SENTENCING** |

**I.    Introduction.**

   Bret Maness asks this court for an order directing that he be re-sentenced in accordance with the principles announced in *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (*en banc*).  Re-sentencing is appropriate because a materially erroneous guideline computation is grounds for re-sentencing.  *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).  In addition, Mr. Maness respectfully submits that the Fifth Amendment Due Process Clause requires that all upward guideline adjustments be proven beyond a reasonable doubt.

**II.     The Original Sentencing Guideline Computation.**

At the original sentencing, the court, applying the then-mandatory sentencing guideline scheme, determined that Mr. Maness's total adjusted offense level was offense level 32, and that his criminal history category was category III. The guideline computation[1] broke down as follows:

| | | | |
|---|---|---|---|
| Base Offense Level | § 2K2.1(a)(4)(B) | (prohibited weapon) | 20 |
| | § 2K3.1(b)(1)(A) | (3 or more weapons) | +1 |
| | § 2K2.1(b)(5) | (used in another felony) | +4 |
| | § 3A1.2(b) | (official victim) | +3 |
| | § 3C1.1 | (obstruction) | +2 |
| | § 3C1.2 | (reckless endangerment) | +2 |
| Total Adjusted Offense Level | | | 32 |

At criminal history category III, this computation exposed Mr. Maness to a mandatory sentencing guideline range of 151 to 188 months. The court imposed 120 months because that represented the statutory maximum for the offense of conviction.

**III.    Re-sentencing Is Appropriate Post-*Ameline* Because The Original Sentencing Was Based On An Incorrect Guideline Sentencing Computation.**

The uncertainty following *Booker* and *Ameline* has in some respects dissipated. It is now clear that the sentencing court must fashion a sentence in accordance with the requirements established by Congress in 18 U.S.C. § 3553(a). The starting point for a sentencing should be the

---

[1] All sentencing guideline references are the United States Sentencing Commission Guidelines effective November 1, 2000.

sentencing guidelines. *United States v. Zavala*, 2006 WL 914528 * 5 (9th Cir. April 11, 2006). However, while the sentencing guideline computation is only one of several § 3553(a) factors, a sentence that is based on a materially incorrect guideline computation requires re-sentencing. *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

In the present case, there was a materially incorrect sentencing guideline computation. The material error at sentencing related to the base offense level computation. The court determined that the base offense level was level 20. The correct base offense level is 14. This material error requires the court to conduct a re-sentencing.

### The Correct Base Offense Level Was Level 14 Because The Norinco Mak-90 7.62 x 39 mm Semi-Automatic Rifle Was Not Prohibited Under 18 U.S.C. § 921(a)(30).

Mr. Maness respectfully submits that the legally correct base offense level in this case is level 14 pursuant to U.S.S.G. § 2K2.1(a)(6). U.S.S.G. § 2K2.1(a)(4)(B), which provides for a base offense level of 20, does not apply because the Norinco Mak-90 at issue was exempt under 18 U.S.C. § 922(v)(3).

The assault weapon ban embodied by 18 U.S.C. § 922(v) became effective on September 13, 1994, and expired on September 13, 2004. Thus, Norincos manufactured or imported before the effective date of the assault weapon ban are not illegal *per se*. *United States v. O'Malley*, 332 F.3d 361, 363 (6th Cir. 2003). *United States v. Serna*, 435 F.3d 1046 (9th Cir. 2006) illustrates why.

> Even before the federal ban was allowed to lapse, it was riddled with exceptions: Congress exempted any firearm lawfully possessed before the passage of the act, *see* 18 U.S.C. § 922(v)(2) (expired 2004), and over 650 specific firearms, *see id.* §922(v)(3) (expired

        2004).  Thus a large number of semiautomatic weapons remained legally in circulation, even during the so-called ban.

*Id.* at 1048.

        The commentary to U.S.S.G. § 2K2.1(a)(4) instructs that "[a] firearm described in 18 U.S.C. § 921(a)(30) (pertaining to semiautomatic assault weapons) does not include a weapon exempted under the provisions of 18 U.S.C. § 922(v)(3)."  Thus, a correct guideline computation requires this court to determine whether the weapon Mr. Maness possessed was exempted under the provisions of 18 U.S.C. § 922(v)(3).

        Mr. Maness respectfully submits that the weapon he possessed was in fact exempted under 18 U.S.C. § 922(v)(3).  Section 922(v)(3) expressly exempts any semiautomatic assault rifle (1) with specifically enumerated characteristics[2] or (2) which is included in the list set out in Appendix A, from the semiautomatic assault weapon ban set out in 18 U.S.C. § 922(v)(1).  However, § 922(v)(3) plainly establishes that Appendix A is not an exclusive list ("The fact that a firearm is not listed in Appendix A shall not be construed to mean that paragraph (1) applies to such

---

[2]  The characteristics specifically enumerated in 18 U.S.C. § 922(v)(3) are as follow:

- any of the firearms, or replicas or duplicates of firearms, specified in Appendix A as such firearms were manufactured on October 1, 1993;

- Any firearm that is manually operated by bolt, pump, level, or slide action, has been rendered permanently inoperable, or is an antique firearm;

- Any semiautomatic rifle that cannot accept a detachable magazine that holds more than 5 rounds;

- Any semiautomatic shotgun that cannot hold more than 5 rounds of ammunition in a fixed or detachable magazine.

firearm"). Thus, there are firearms which are not listed in the Appendix A list which also will not support the base offense level 20 computation established by U.S.S.G. § 2K2.1(a)(4)(B).

Mr. Maness respectfully submits that (1) **weapons which are listed in Appendix A** and (2) **semiautomatic assault weapons which were manufactured before September 13, 1994,** the effective date of the assault weapon ban, are (3) **exempted by § 922(v)(3)**. Consequently, the weapons which are listed in Appendix A **and** semiautomatic assault weapons manufactured before September 13, 1994, cannot be used to establish a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(B). Because the weapon in this case was manufactured on or before September 13, 1994, it is exempted under 18 U.S.C. § 922(v)(3) and will not support an enhanced base offense level under U.S.S.G. § 2K2.1(a)(4)(B).

This result makes sense if one thinks about the general purposes behind U.S.S.G. § 2K2.1. A convicted felon is a prohibited person. If a prohibited person possesses a firearm that is not prohibited, his or her base offense level is established at offense level 14. If a prohibited person possesses a firearm which also happens to be a prohibited weapon, his or her base offense level is increased from level 14 to level 20.

**What distinguishes the two base offense level guidelines is not only the type of weapon**. If it were simply the type of weapon that was determinative, § 2K2.1 would only reference 18 U.S.C. § 921(a)(30) which defines semiautomatic weapons. There would be no purpose to reference 18 U.S.C. § 922(v)(3) which distinguishes between semiautomatic weapons which are prohibited and semiautomatic weapons which are not prohibited.

**Instead, the critical inquiry is whether the weapon is a prohibited weapon**. As indicated, the effective date for 18 U.S.C. § 922(v) was September 14, 1994. 18 U.S.C. § 922(v)

(West 2003). In the case of the Norinco, the weapon is not prohibited if manufactured before the September 14, 1994, effective date of the statute; however, the weapon is prohibited if manufactured after the September 14, 1994, effective date of the statute. In this instance, the government's tracing report establishes beyond doubt that the Norinco at issue here was manufactured before September 14, 1994. *See* Exhibit A (Government Tracing Report). Therefore, the Norinco in this case was not a prohibited weapon.

Because the Norinco is excluded under 18 U.S.C. § 922(v)(3), it was not a prohibited weapon, and Mr. Maness's Base Offense Level cannot exceed offense level 14. For these reasons, Mr. Maness is entitled to be re-sentenced with a guideline computation that establishes the correct base offense level at offense level 14.

IV.  **Re-sentencing Is Appropriate Post-*Ameline* Because The Fifth Amendment Due Process Clause Requires Guideline Sentencing Enhancements To Be Proved Beyond A Reasonable Doubt.**

Mr. Maness respectfully submits that re-sentencing is appropriate because the Fifth Amendment Due Process Clause requires facts, which enhance a sentence under the now-advisory guidelines, to be proved beyond a reasonable doubt. Mr. Maness's case illustrates the point dramatically.

**As Convicted, The Advisory Guideline Sentence Is 21 To 27 Months**.

The jury returned a guilty verdict to an indictment charging Mr. Maness with two counts of being a felon-in-possession in violation of 18 U.S.C. § 922(g)(1). Those counts were consolidated for sentencing after the court granted Mr. Maness's motion to arrest judgment on Count 2. As illustrated in Part II, *supra*, Mr. Maness was sentenced to 120 months based on a total

adjusted offense level of 32 and a criminal history category of III. Eighteen of the 32 levels resulted from post-trial factual findings made using either a preponderance of the evidence standard or a clear and convincing evidence. But for these factual findings, Mr. Maness would have confronted a guideline sentencing range of 21 to 27 months.[3]

### Advisory Guideline Enhancements Increase The Advisory Guideline Range To 151 to 188 Months.

The government achieved the enhanced advisory guideline computation by proving a variety of guideline enhancements either by a preponderance of the evidence or by clear and convincing evidence. The end result of these post-trial machinations was a five-fold increase of Mr. Maness's advisory guideline exposure.

In *United States v. Booker*, 125 S.Ct. 738, 764 (2005), the Supreme Court invalidated the United States Sentencing Guidelines to the extent that law required them to be mandatorily applied. To save the guidelines from wholesale invalidation of the guidelines, the Court declared the guidelines advisory and held that sentences are subject to appellate review for reasonableness. *Id.* at 757, 765-66.

Mr. Maness's case presents the questions of whether and under what standard of proof, this court can determine facts at sentencing so as not to offend a defendant's Fifth Amendment right to due process. A Fifth Amendment challenge involves a constitutional protection of surpassing importance – the proscription against deprivation of liberty without due process of law. *Apprendi v. New Jersey*, 530 U.S. 466, 477 (2000). It provides that a criminal defendant is entitled to a determination that he or she is guilty of every element of the crime with which he or she is charged

---

[3] At base offense level 14 with a criminal history computation of III, an offender confronts an advisory guideline range of 21 to 27 months.

beyond a reasonable doubt. *Id.* The entitlement of proof beyond a reasonable doubt is as equally well founded as the right to a jury determination. *Id.* at 478, *see also In re Winship*, 397 U.S. 358, 361 (1970).

Given the substantial increase in the sentence achieved by the government, Mr. Maness respectfully submits that the advisory guideline enhancements must be established beyond a reasonable doubt. Since the enhancements were not so proved, re-sentencing is appropriate.

**V.    Conclusion.**

For all these reasons, Mr. Maness asks that he be re-sentenced in accordance with the *Ameline* remand.[4]

---

[4] For the record, Mr. Maness persists in the following claims:

- that the court improperly restricted his Sixth Amendment right to present a duress defense. *See Holmes v. South Carolina*, 126 S.Ct. 1727 ( 2006), *United States v. Dixon*, 413 F.3d 520 (5th Cir. 2005), *cert. granted in part*, 126 S.Ct. 1139 (2006);

- that the court improperly denied his right to a jury trial on upward adjustments that constitute separate crimes, *Apprendi v. New Jersey*, 530 U.S. 466 (2000);

- that the court improperly ordered that he be shackled at trial without notice and without a hearing establishing compelling circumstances for shackling to maintain courtroom security, *Illinois v. Allen*, 397 U.S. 337 (1970);

- that the court improperly restricted Mr. Maness's right to testify about his defense when it ruled that he could not testify that he was shot in the back, *Taylor v. Illinois*, 484 U.S. 400 (1988).

DATED at Anchorage, Alaska this 15th day of May 2006.

Respectfully submitted,

s/Kevin F. McCoy
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:          907-646-3400
Fax:            907-646-3480
E-Mail:         kevin_mccoy@fd.org

Certification:
I certify that on May 15, 2006,
a copy of *Bret Maness's Request
for Re-sentencing* was served
electronically on:

Frank Russo
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

s/Kevin F. McCoy