Bret F. Maness

Reg. No. 14611-006

U.S. Penitentiary

P.O. Box 019001

Atwater, CA 95301-0910

(209) 386-4673



FILED

JUL 3 1 2006

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

By_____Deputy

UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, ) | NO. 3:03-cr-00077-RRB |
|---|---|
| Plaintiff, ) | REPLY TO GOVERNMENTS |
| VS. ) | OPPOSITION TO |
| BRET F. MANESS, ) | MANESS'S SUPPLEMENTAL BRIEF |
| Defendant. ) | RE: RESENTENCING |
| ) | |

Bret F. Maness hereby submits his reply to the "Government's response to Defendant's supplemental brief Re: Re-Sentencing" that was submitted on July 14, 2006.

I. ORIGINAL SENTENCE WAS BASED ON INCORRECT
   GUIDELINES COMPUTATION.

A. "ASSAULT WEAPON" ENHANCEMENT

The government concedes that the Norinco Rifle at issue here, is not "[A] firearm described in [former] 18 U.S.C. § 921(a)(30)" (U.S.S.G. 2K2.1(a)(5), November 2003 ed.). Thus, the original sentence in this case was based upon an incorrect guidelines computation and re-sentencing is required pursuant to United States V. Cantrell, 433 F.3d 1269, 1279-80 (9th Cir. 2006).

The government then argues that Mr. Maness's prior state conviction "qualifies as a controlled substance offense and would therefore subject him to the same, enhanced base offense level" of 20 under U.S.S.G. § 2K2.1(a)(4)(A).

However Mr. Maness's predicate felony conviction is for the mere possession of marijuana (AS 11.71.04(a)(3)(F)) and therefore does not qualify as a "controlled substance offense" under § 2K2.1(a)(4)(A). See: § 4B1.2(b) "the term 'controlled substance offense' means ... the possession of a controlled substance ... with intent to manufacture, import, export,, distribute, or dispense". This definition does not include a conviction for the simple possession of marijuana. Nor does it include Maness's simultaneous conviction for maintaining a dwelling (AS 11.71.04(a)(5)) as "the underlying offense (the offense facilitated) was [not] a 'controlled substance offense'" U.S.S.G. Application Note 1 of the Commentary to § 4B1.2.

2

The governments argument has previously been rejected by U.S. Probation and this Court (See: Probations "Addendum to the Presentence Report" p.2) (dated 10-30-03).

Hence the correct base offense level is 14 not 20. This alone lowers Maness's total offense level from 32 (as found by the court calculating base offense level at 20) with a guidelines range of 151-188 months, to a total of offense level 26 with a guidelines range of 78-97 months.

### B. POSSESSION OF FIREARM IN CONNECTION WITH ANOTHER FELONY OFFENSE

Mr. Maness's argument that he has a Sixth Amendment right to a jury trial on sentencing enhancements that essentially convict him of serious crimes other than the crime of conviction and have collateral consequences in other courts is fully explained in his "Brief Re: Re-Sentencing" which was filed and served May 15, 2006. (Apparently there is some confusion as Mr. Maness has filed both a "Brief Re: Resentencing" and a "Supplemental Brief Re: Resentencing" filed and served May 23, 2006).

Moreover, Mr. Maness contends that he has a Fifth Amendment due process right to have the five serious uncharged crimes in this case proven beyond a reasonable doubt in a proceeding that gives him an opportunity to confront his accusers. In Re Winship, 397 U.S. 358, 361.

3

The government's sole legal argument on why this particular enhancement was not improper appears to be "it is an enhancement, not an increased statutory maximum or mandatory minimum, and therefore the cases he cites no not apply". However the argument the government today puts forth has been extensively discussed and thoroughly rejected by the U.S. Supreme Court in at least two of the cases cited by Mr. Maness, Apprendi V. New Jersey, 530 U.S. 466, 478 (2000) ("any possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown [to the common law] as it existed during the years surrounding our nations founding").

Indeed Maness's case is a classic example of a man "that a judge [Has] sentence[d] for committing murder even [though] the jury convicted him only of illegally possessing [a] firearm..." because a judge and not a jury has convicted him of serious crimes that "it labels sentencing factors..." Blakely V. Washington, 542 U.S. 296, 306 (2004).

The government claims that Mr. Maness "brandished [a] firearm at police" and this constitutes "aggravated assault". This allegation, even when accepted on its face as true, does not meet the definition of aggravated assault provided in U.S.S.G. 3A1.2(b) Application Note 4(A).

C. OBSTRUCTION ENHANCEMENT (ALLEGED PERJURY).

4

Apparently the government is at a loss as to the meaning of "willfully false testimony under oath concerning a material matter" Mr. Maness will attempt to make it as clear as possible.

Mr. Maness has cited the case of <u>Gilmore V. Taylor</u>, 508 U.S. 333, 359-63 (justice Blackmun with Justice Stevens dissenting) because it explains an analogous situation. Similar to the defendant in <u>Gilmore</u>, Mr. Maness was precluded from presenting his affirmative defense to the jury. Moreover, relevant, reliable evidence, testimony, and cross-examination in support of his affirmative defense were excluded. Thus, Maness was effectively forced to take the stand and confess to the elements of the felon of possession statute. By precluding Maness's affirmative defense the trial judge effectively transformed exculpatory testimony into a plea of guilty. <u>Gilmore</u> at 363. Hence the impossibility of perjury about a material matter.

Moreover the government has not provided one iota or scintilla of evidence that Mr. Maness has committed perjury at all. The reason provided by the Trial Court for applying this enhancement was "jury didn't believe that. I didn't believe it..." (Sentencing Transcript at p.22).

First the trial judge is in no position to profess what this jury did or did not believe (unless perhaps there was some ex parte communication?) since "as far as the jurors

5

could tell [Maness] had confessed to the crime [] in open court". Id. Next, if this is the standard for convicting citizens of perjury, the moment a litigant uttered a word, a despotic judge could have them carted off to the gulag because he "didn't believe that" this is not only bad sport it is un-american.

D. ENHANCEMENT FOR "OFFICIAL VICTIM".

The government and police in this case make the bald statement, unsupported by any evidence, that "Maness pointed a loaded weapon at uniformed police officers". It bears repeating that Mr. Maness was not and has not been allowed to present any evidence or argument in rebuttal.

As explained previously the fact that Mr. Maness was shot in the back absolutely proves that Mr. Maness physically could not have been pointing a rifle at the officers who shot him. Mr. Maness has presented absolute proof to this Court that he was shot in the back. Most significant is Attachment B-2 of Maness's "Supplemental Brief Re: Resentencing" (DOC 141-4) which is a medical specialist's explanation of a Cat-Scan taken of Mr. Maness on 6-28-01. Translated from medicalese this report states that there are bullet and bone fragments scattered about in a tract that leads from Maness's shoulder blade outward through the back of his shoulder.

The significance of the leaf with the shotgun-slug

6

hole in it at Att. B-6 (DOC 141-5) is that a close inspection reveals that this hole is the exact size and shape as the large exit wound behind Maness's shoulder. Att. B-5 (DOC 141-5). It is not disputed that the hole in this leaf was created after the shotgun slug had passed through Mr. Maness's body, hence physically proving that the exit wound was behind the shoulder and the much smaller entrance wound was in the middle of the back.

When an analogous situation is raised in a civil rights action "the judge must carefully examine all the evidence in the record such as medical reports... and the available physical evidence..." "[T]he court may not simply accept what may be a self-serving account by the police officer". Scott V. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).

The government next contends that "the Ninth Circuit has already addressed this improper defense on appeal, and as such it is the law of the case and cannot be raised again" the Ninth Circuit in its final order in this case stated: "The District Court did not abuse its discretion in restricting Maness's testimony. Whether Alaska State Troopers shot Maness in the back was not relevant to whether he was a felon in possession...". This is the entire scope. The government is attempting to broaden the Ninth Circuits ruling. Whether Maness was shot in the back is obviously extremely relevant to the question of whether he "pointed a loaded weapon at uniformed policemen". Moreover, this case was remanded for re-sentencing and the Ninth Circuit did not

7

preclude Mr. Maness from any issue at resentencing.

In response to the government characterization of Mr. Maness's self defense/duress/justification defense as an "improper defense" Maness points to the obvious fact that these affirmative defenses have been recognized by anglo-saxon common law for hundreds of years. "A person has a right to resist an officer who is using excessive force" United States V. Span, 75 F.3d 1383, 1388 (9th Cir. 1996) defense of self is a valid defense against absurd police conduct. Harris V. Roderick, 126 F.3d 1189, 1197 n.7 (9th Cir. 1997). Hence defense of self against negligent and malicious law enforcement is a valid justification to possess a firearm.

E. EX POST FACTO.

Sentencing Mr. Maness to any sentence above 27 months (the statutory maximum authorized by the jury verdict under mandatory guidelines) violates the ex post facto clause of the U.S. Constitution. Maness concedes that this argument is precluded at this point by United States V. Dupas, 419 F.3d 916 (9th Cir. 2005), but raises it to preserve the issue for further review.

II. CRIMINAL HISTORY.

Since it is now undisputed that Mr. Maness's state

sentence was stayed pending appeal, it is also clear that Mr. Maness was not "under any criminal justice sentence" (U.S.S.G. 4A1.1(d)) and should have not received two criminal history points under that section. Moreover Mr. Maness was acquitted of the charge he was on bail pending appeal for and had completely served the sentence for possession of marijuana thus, there was no criminal justice sentence to be under.

### III. ELIGIBILITY FOR REDUCED SENTENCE.

Mr. Maness agrees with the government that this Court has the discretion to fashion a reduced sentence pursuant to United States V. Clough, 360 F.3d 967, 970 (9th Cir. 2004).

### IV. CONCLUSION.

Mr. Maness is entitled to a full and fair sentencing hearing. In its conclusion the government hammers away at its oft repeated motif of how this Court should sentence Mr. Maness to beyond the maximum because he is such a terrible criminal. This is supported by multiple layers of hearsay and, most disturbingly, because "he will likely commit crimes again as soon as he is released". One must ponder if Mr. Bradley obtains his legal arguments from a KGB handbook.

The fact remains that Mr. Maness is convicted of

nothing more then the mere mala prohibita offenses of smoking marijuana and being a gun owner. The government is very interested in spending millions to incarcerate Mr. Maness for as long as it possibly can, yet seems totally uninterested in Mike Gordon's long running sado/masochist child pornography ring. Members of the public may wonder why this is so.

Dated this 24th day of July, 2006

_____
Bret Maness

Bret F. Maness hereby declares under pain of perjury that he deposited true and correct copies of the foregoing in the legal mail system at U.S.P. Atwater, in a sealed envelope, first class postage pre-paid, addressed to:

District of AK Court Clerk - Fairbanks

Tom Bradley, Frank Russo, A.U.S.A.'s

at their addresses of record on 7-24-06

_____
Bret Maness