NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
THOMAS C. BRADLEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Frank.Russo@usdoj.gov
Thomas.Bradley@usdoj.gov

Attorneys for Plaintiff


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:03-cr-00077-RRB |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' MOTION** |
| | ) | **TO RECONSIDER ORDER** |
| vs. | ) | **MODIFYING SENTENCE** |
| | ) | |
| BRET F. MANESS, | ) | |
| | ) | **Filed on Shortened Time** |
| Defendant. | ) | |
| | ) | |

COMES NOW, Plaintiff United States of America, and hereby moves the

Court to reconsider its Order Modifying Sentence dated August 23, 2006.  Therein,

the Court reduced the defendant's sentence to 97 months, which the Court believed

represented the top end of the defendant's sentencing guideline range.  The United

States requests that the Court reconsider its ruling for both substantive and procedural reasons.  Substantively, the defendant's argument that the Norinco MAK-90 semi-automatic assault rifle he was convicted of possessing was not a "prohibited weapon" is without merit and supported only by misrepresentations.  Arguments about the defendant's base offense level have already been heard by both this Court and the Ninth Circuit.   Neither has previously found the defendant's arguments persuasive.   The defendant's latest attempt to convince the Court otherwise similarly fail.

Procedurally, the limited remand pursuant to <u>Ameline</u> required only that the Court hold a resentencing hearing if it determines that the sentence it would have imposed under an advisory guideline system would have been materially different. Recalculation of sentencing guidelines is beyond the scope of this limited remand. Nevertheless, if the Court does indeed decide that the sentence it would have imposed under an advisory guideline system would have been materially different, a new sentencing hearing must be held.   This would allow the United States (as well as the defendant) to fully argue other guideline adjustments and departures it argued at the defendant's original sentencing hearing, but were not decided by the Court because the defendant's guideline range already exceeded the statutory maximum sentence.  In addition, the United States would be permitted to argue the

18 U.S.C. § 3553(a) factors that favor maintaining the defendant's sentence at the statutory maximum, as well as allow the victims and those affected by the defendant's sentence an opportunity to be heard at a resentencing hearing.  Such an opportunity to be heard is compelled by Fed. R. Crim. P. 32(i).

Notwithstanding the above, the Court's original guideline calculation was correct, and, by the Court's reasoning, resentencing is not necessary because the defendant would have received a 120 month sentence in any event.  Otherwise, the Court should hold a new sentencing hearing at which these and other sentencing issues can be fully addressed.

## I.    PROCEDURAL POSTURE

On July 19, 2003, Brett F. Maness was convicted by jury trial of two counts of being a felon in possession of firearms and ammunition, in violation of 18 U.S.C. § 922(g)(1).[1]  A sentencing hearing was scheduled for November 25, 2003. Both parties filed sentencing memoranda.  In the United States sentencing memorandum, the United States contended that the defendant had a base offense level of 34 and a criminal history category of IV which would correspond to a 210 to 262 month guideline range.   Contained within such calculations were the United States arguments for upward departures based upon application notes 2 and 6 of

---

[1]  These two counts were merged after the defendant filed a motion to arrest judgment that was not opposed by the government.

U.S.S.G. § 3C1.2 (upward departure warranted where, during reckless

endangerment during flight, a "high degree of culpability is involved" or the

conduct posed "a substantial risk of death or bodily injury to more than one

person"), as well as an under-represented criminal history category pursuant to

U.S.S.G. § 4A1.2.  See United States Sentencing Memorandum, filed on

November 18, 2003, pp. 12 - 19.  Prior to the sentencing hearing, the Court

requested additional briefing on the issue of whether the Norinco MAK-90 semi-

automatic weapon was a "prohibited weapon".  See Minute Order from Chambers,

filed at docket 102 on November 19, 2003.  The United States filed additional

briefing on

November 21, 2003, at docket 103, arguing that the Norico MAK-90 was indeed a

prohibited weapon so as to require an enhanced base offense level of 20 pursuant

to USSG § 2K2.1(4)(B).

A sentencing hearing was held on November 25, 2003.  The Court agreed

with the United States that the defendant's base offense level was 20 because the

Norinco MAK-90 qualified as a prohibited weapon.  The Court applied

enhancements for number of weapons involved  (+1), for possessing firearms in

connection with another felony offense (+4), for official victim (+2), obstruction of

justice (+2), and reckless endangerment (+2).  The Court did not address the issue

of whether the defendant was placed in criminal history category II, III, or IV, because it did not ultimately matter, as all criminal history categories resulted in a guideline range above the statutory maximum.  <u>See</u> Transcript of Sentencing Hearing, attached as an Exhibit A to the United States Opposition to New Sentencing Hearing filed at docket 129, pp. 24-25 ("So what we have here, from the Court's perspective, is an offense level of 32, Criminal History Category of II or III, for a sentencing range of 135 all the way up to 188 months.  But we have a statutory maximum of 120 months.  That's kind of drawing the picture.")  Nor did the Court address the Government's request for an upward departure based upon application notes 2 and 6 of U.S.S.G. § 3C1.2 (reckless endangerment upward departure) as argued in its sentencing memorandum.

The defendant was sentenced to 120 months, with the Court commenting that "there's no question that you've earned the maximum sentence in this case, and it doesn't matter whether I – I find an offense level of II or III because I think that the maximum 10-year sentence is appropriate and I have the authority to impose that sentence at either offense level.  I do think, though that offense level III is the appropriate offense level under the circumstances, after having heard the arguments of counsel.  <u>Id.</u> at 32.

The defendant appealed his conviction and sentence to the Ninth Circuit Court of Appeals, again disputing that the firearm in his possession was a prohibited semi-automatic assault weapon, arguing that because it was manufactured prior to the enactment of the ban on assault weapons, it was "grandfathered" under the law and therefore was not a prohibited weapon. The Ninth Circuit affirmed the defendant's conviction on June 9, 2005, and, without deciding the assault weapon claim, issued a limited remand to this Court for resentencing pursuant to United States v. Ameline, 409 F3d 1073 (9th Cir. 2005). The defendant filed a petition for rehearing on the assault weapon issue on June 22, 2005, which the Ninth Circuit granted and refused to entertain. The Ninth Circuit filed an amended order affirming the conviction on July 21, 2005, and issued a limited remand to this Court on August 23, 2005.

At docket 124, this Court requested briefing on whether a new sentencing hearing was necessary pursuant to Ameline. In this order, the Court framed the issue as follows:

> Specifically, Ameline provides that the Court should first ascertain whether the sentence imposed would have been materially different had the District Court known that the sentencing guidelines were advisory. If so, the original sentence should be vacated and the Defendant should be re-sentenced. Re-sentencing would require an updated pre-sentence report, supplemental briefing by the parties, and a second sentencing hearing.

Id. (emphasis added).  The United States responded to this request on September

14, 2005.   In the meantime, the defendant filed a petition for certiorari with the

United States Supreme Court, staying the remand to this Court.  The Supreme

Court denied certiorari on February 21, 2006, and the defendant filed notice of this

denial with the Court on April 25, 2006.  On May 15, 2006, the defendant

submitted a request for resentencing, once again clinging to the twice-rejected

argument that his base offense level was 14 – not 20.  For good measure, the

defendant filed a pro se motion regarding resentencing, again relying upon the

same erroneous arguments previously rejected.  Ironically, in his pro se motion, the

defendant completely reversed field from his earlier contention about the Norinco

MAK-90, this time claiming that the weapon was a "post-ban" weapon, whereas

earlier he had contended to both this Court and the Ninth Circuit that the weapon

was a "pre-ban" weapon, and thus exempted from prohibited status.

    At docket 153, the Court requested further briefing from the government on

the issue of whether the firearm qualified as a prohibited assault weapon.  In its

response, the United States admittedly gave the issue short shrift, given that the

issue had been addressed in previous filings and had already been decided; what

had not been decided – and what Ameline mandates – was a limited remand for the

purpose of determining whether the sentence would have been different had the

guidelines been mandatory.

District courts reviewing cases on limited remand are restricted in the scope of their inquiry to the issues determined unresolved by the appellate court. In United States v. Pimentel, 34 F.3d 799, 800 (9th Cir. 1994), a case arising after the appellate court issued a limited remand to determine a single sentencing issue, the court distinguished limited remands from the more general type. The court acknowledged that although it is the ordinary practice to vacate the entire sentence and remand for resentencing, thereby empowering the district court to "address all sentencing issues following remand," where the scope of the remand had been limited, "the district court was without authority to reexamine *any* other sentencing issues on remand." Pimentel, 34 F.3d at 800 (emphasis added).

Similarly, this Court issued a limited remand to be conducted pursuant to the instructions in Ameline. As dictated by Ameline, the question under consideration is not whether the defendant should have received a different sentence. Rather, the question is whether under an advisory guidelines regime the defendant would have received a different sentence, and whether that difference would have been *material*. Thus, recalculation of guideline issues were beyond the scope of the limited remand.

Acting in accordance with this authority, the United States framed the issue

as not whether the guidelines should have been calculated differently, but rather what the Court would have done had it known that it was permitted to stray from the guidelines. It appeared clear from the Court's sentencing comments that an advisory guideline scheme would not have made a difference. However, if the Court decides that its sentence would have been materially different, then a new sentencing hearing must be held, and the guideline considerations could be calculated anew.

The Court, however, appeared to view its task differently, as evidenced from its comment in footnote 2 in the Order Modifying Sentence:   "The Court views its current task as to determine what sentence it would have imposed under an advisory guideline system had it accurately calculated the guideline range at the time of sentencing." Such an undertaking is beyond the scope of the limited remand, and conflicts with the Ninth Circuit's holding in <u>Pimentel</u>.

Nevertheless, based on the United States' response, the Court was left with the impression that the United States was conceding this issue regarding the defendant's base offense level – which it does not.   Regardless, as is clear from both the previous decisions of this Court as well as the Ninth Circuit, the base offense level of 20 was warranted, as more fully set forth below. As the Court recognized in its order on remand at docket 124, if the Court still decides that the

sentence may have been different under an advisory system, the proper procedure is to hold a new sentencing hearing, during which such arguments, as well as the sentencing factors set forth in 18 U.S.C. § 3553(a), can be properly considered.

## II.    THE NORINCO MAK-90 IN MANESS'S POSSESSION WAS A SEMIAUTOMATIC ASSAULT WEAPON WITHIN THE DEFINITION OF THE SENTENCING GUIDELINES.

The rifle that Maness was carrying during the manhunt that led to his arrest was a Norinco MAK-90 semi-automatic rifle, purchased on December 23, 1993. As was abundantly clear from trial testimony, the Norinco MAK-90 is Norico's version of the Avtomat Kalashnikov ("AK-47"). See Trial Testimony of Firearms Expert Alfred Vernon Houde, p. 3-33, attached hereto in relevant part as Exhibit A (Referring to the Norinco MAK-90: "This is a semi-automatic version of the AK-47 type machine gun.") Under the Sentencing Guidelines, the base offense level for convictions of a felon in possession of firearms is established, in part, based on the type of firearm involved.

USSG §2K2.1, the guideline for unlawful possession of firearms, provides in pertinent part at subpart (a)(4)(B) that the base level is 20 if "the offense involved a firearm described in . . . 18 U.S.C. § 921(a)(30)."  Section 921(a)(30) in turn provides: "The term 'semiautomatic assault weapon' means – (A) any of the firearms, or copies or duplicates of the firearms in any caliber, known as – (i)

Norinco, Mitchell, and Poly Technologies Avtomat Kalishnikovs (all models)."

As Agent Houde's undisputed expert testimony made clear, Maness's weapon was

a Norinco AK-47 type rifle.

Following Maness's conviction, the presentence report recommended that

for purposes of calculating his sentence, the base offense level should be level 20,

because the weapon involved in his offense was a semiautomatic assault weapon

described in 18 U.S.C. § 921(a)(30).  See, USSG §2K2.1(a)(4)(B) above.  At the

time, Maness objected that because the rifle was manufactured before September

13, 1994, prior to the effective date of the Violent Crime Control Act, therefore the

weapon was somehow "grandfathered" in by virtue of a different subsection,

§ 922(v).  In sum, he argued that because the particular weapon he possessed was

implicitly exempted by § 922(v), it ought not count as a "semiautomatic assault

weapon" for purposes of the Guidelines either, and that the lower base offense

level of 14 contained in USSG §2K2.1(a)(6) should apply instead.

This Court rejected this argument, finding "by clear and convincing

evidence that [Maness] possessed an automatic weapon of the kind and nature to

qualify for an offense level 20.  The Noriko – Noriko (ph) 90 was a prohibited

weapon, was a semi-automatic assault weapon. . . . So I think that the law requires

us to proceed on an offense level 20."  Transcript of Sentencing Hearing , p. 19.

The defendant raised the identical point on appeal, which was unavailing.  Now, the defendant has completely reversed field.  Instead of claiming that his weapon was imported <u>before</u> the Violent Crime Control Act and therefore somehow "grandfathered" in by virtue of an inapposite statute (as he did before this Court and to the Ninth Circuit), he argues that his Norinco was imported <u>after</u> the Violent Crime Control Act, or the "assault weapons ban", as he calls it:

> The rifle at issue in this case is an Norinco Mak-90.  This rifle is referred to, by people in the know, as a "post-ban" rifle.  This is because it was imported after the enactment of the former "assault weapons ban".  The simple fact is that this rifle was specifically manufactured without the offending "bad" characteristics (i.e. bayonet lug, flash suppressor) so it could be legally imported after the former "assault weapons ban" 18 U.S.C. § 921(a)(30) was passed into law.

Defendant's Supplemental Brief Re: Resentencing, p. 3.

Aside from taking a completely different position from his earlier pleadings in making such argument, the defendant has affirmatively misled the Court.  The Norinco MAK-90 was purchased by a man named Virgle William Davis on December 23, 1993 in Alaska.  <u>See</u> Firearms Trace Summary, attached hereto as Exhibit B.  This is significant because the Violent Crime Control Act, or "assault weapons ban," was passed on September 13, 1994.  <u>See</u> Pub. L. No. 103-322, 108 Stat. 1796.  Therefore, the defendant's Norinco MAK-90 could not possibly have been imported after the enactment of the 1994 statute, because it was purchased in

Alaska in 1993.  Thus, the defendant has misrepresented facts to the Court.

Similarly, the case the defendant cites does not support his argument and is easily distinguished.  In United States v. Jamieson, the Eleventh Circuit reversed the district court's application of an enhanced base level for a Norinco firearm simply because the firearm was a Norinco.  202 F.3d 1293.  First of all, unlike the Norinco in the case at bar, the firearm in Jamieson was in fact imported after the assault weapons ban, and did not have the offending characteristics that Maness's weapon contained.  Id. At 1295.  Moreover, there was no testimony at Jamieson's sentencing hearing that his rifle was an "AK" weapon or a copy of an "AK" weapon.  Id. at 1297.

In contrast, in the case at bar, Special Agent Houde's uncontested testimony was that Maness's Norinco MAK-90 was a semi-automatic version of the AK-47 machine gun.  Ex. A, p. 3-33.  Thus, unlike the Norinco in Jamieson, it qualifies as a "semiautomatic assault weapon" pursuant to 18 U.S.C. § 921(a)(30)(A)(i).   In addition, as is clear from Special Agent Houde testimony, the Norinco MAK-90 also qualifies as a "semioutomatic rifle" pursuant to 18 U.S.C. § 921(a)(30)(B).[2] Agent Houde testified that Maness's Norinco MAK-90 had a metal folding stock, a

---

[2]        18 U.S.C. § 921(a)(30)(B) provides, in relevant part, that the term "semiautomatic machine gun" means--: "(B) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least 2 of – (i) a folding or telescopic stock; (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon.

pistol grip that allows one to fire it with one hand, and a detachable magazine.  Ex.

A, pp. 3-33 - 3-37.   Accordingly, unlike the weapon in <u>Jamieson</u>, Maness's

Norinco MAK-90 is clearly and unequivocally a "semi-automatic assault weapon."

The only way Maness possibly can avoid such categorization is by availing

himself of USSG § 2K2.1, Application Note 3, which excludes certain types of

firearms exempted by the provision of 18 U.S.C. § 922(v)(3), such as firearms that

are operated manually, that have been rendered permanently inoperable, are

antiques, are capable of firing five rounds or less, or are included in a list,

Appendix A, of specific weapons not intended to be covered.  The Guidelines

specifically provide that weapons excluded by section 922(v)(3) are not intended to

be considered semiautomatic assault weapons for purposes of establishing the

offense level.  Unfortunately for the defendant, the Norinco MAK-90 that was used

by him is fully operational, is not an antique, is capable of firing more than five

rounds, and is not listed in Appendix A; thus, despite the defendant's best efforts to

twist the facts and the law in his favor, no exemptions apply and his base offense

level is still 20.

## III.    A NEW SENTENCING HEARING IS REQUIRED WHERE THE COURT DETERMINES THAT IT WOULD HAVE SENTENCED DIFFERENTLY HAD THE GUIDELINES BEEN ADVISORY.

Despite the fact that the defendant's original guideline calculation was

unmistakably correct, if the Court decides to revisit such calculations and

resentence the defendant, a new sentencing hearing must be held.  <u>Ameline</u>

explicitly sets forth the procedure to be followed if the Court decides that a

sentence would have differed materially if the guidelines were advisory:

> If the district court determines that the sentence imposed would have differed materially if the district court judge were applying the Guidelines as advisory rather than mandatory, the error was prejudicial, and the failure to notice the error would seriously affect the integrity, fairness, and public reputation of the proceedings.  <u>In such a case, the original sentence will be vacated and the district court will resentence with the defendant present.  In resentencing the defendant, the district court is permitted to take a fresh look at the relevant facts and the Guidelines consistent with Booker, the Sentencing Reform Act of 1984, Rule 32 of the Federal Rules of Criminal Procedure, and this opinion.</u>

<u>Ameline</u>, 409 F.3d 1073, 1085 (emphasis added).  Moreover, the resentencing

should take place on an open record, without limitation on the evidence that the

district court may consider.  <u>United States v. Matthews</u>, 278 F.3d 885-86 (9th Cir.

2002) ("On remand, the district court generally should be free to consider any

matters relevant to sentencing, even those that may not have been raised at the first

sentencing hearing, as if it were sentencing <u>de novo</u>.").  Indeed, this Court

correctly recognized the <u>Ameline</u> resentencing procedure in its Order on Remand

filed at docket 124.

Finally, there were additional upward departures sought by the government

at sentencing that were not fully considered by the Court because they were irrelevant at the time, as the defendant's guideline range exceeded the statutory maximum.   One such departure is authorized by application notes 2 and 6 of U.S.S.G. § 3C1.2 (upward departure warranted where, during reckless endangerment during flight, a "high degree of culpability is involved" or the conduct posed "a substantial risk of death or bodily injury to more than one person").  See United States v. Hernandez-Rodriguez, 975 F.2d 622 (9th Cir. 1992) (upward departure in sentence was appropriate based on fact that defendant led agents on three hour chase, even though the court also enhanced sentence for reckless endangerment of another person during flight from law enforcement officers); United States v. Beasley, 90 F.3d 400 (9th Cir. 1996) (two-level upward sentencing departure based on the extreme nature of defendant's flight, and violent conduct in attempting to escape, was warranted.).  The United States also argued that Criminal History Category III significantly under-represented the seriousness of the defendant's past criminal conduct, and a departure was warranted pursuant to U.S.S.G. § 4A1.2.   See United States v. Hines, 29 F.3d 1469 (9th Cir. 1994) (upward departure appropriate upon finding that defendant posed extraordinary danger to the community and that criminal history category did not reflect dangerousness).

If the Court is inclined to change the defendant's guideline range, those and other arguments should be fully considered at resentencing. Thus, during resentencing, the Court is permitted to take into consideration new arguments and evidence from both the defendant and the United States. In particular, both sides should be permitted to argue the sentencing factors set forth in 18 U.S.C. § 3553(a). Finally, it is necessary to give the victims of the defendant's crime an opportunity to address the Court at resentencing. <u>See</u> Fed. R. Crim. P. 32(i)

## IV.    THE PRE-INDICTMENT DELAY OF 21 MONTHS SHOULD NOT AFFECT THE COURT'S SENTENCING DECISION.

In its Order on Resentencing, the Court implies that the 21- month period before the defendant was indicted should somehow serve as a mitigator for his sentence. First of all, the defendant has already received credit for this time from the Bureau of Prisons. It appears that the defendant's prospective release date, <u>before</u> factoring in the Court's Order Modifying Sentence, was March 19, 2010. That date is only seven years and one month after the defendant's federal incarceration, which occurred in February 21, 2003. Based upon review of a Bureau of Prisons printout, the defendant has received 876 days credit on his federal sentence, despite the fact that he was incarcerated on a separate case during the first 21 months of that time.[3]   <u>See</u> Bureau of Prisons printout, attached hereto

---

[3]         The Bureau of Prisons is currently investigating this matter.

as Exhibit C.   Therefore, without any order of concurrent time from the Court, the

defendant has already been credited (erroneously, in the view of the United States)

with all the time he served since the date of his arrest on July 2, 2001.

Once again, it is important to emphasize that the defendant was not simply

incarcerated awaiting a charging decision on the instant offense.  Rather, <u>he was

being detained pending retrial of an unrelated pending state matter, as well as

serving a sentence pertaining to such unrelated case</u>.  Really, the only detriment

that can be conceived of regarding the pre-indictment delay in this case is a

speculative argument that had the defendant been charged and convicted

immediately in June 2001, this Court <u>might have</u> run his sentence concurrently to

his state sentence.  This optimistic assumption runs counter to the factors to be

considered pursuant to 18 U.S.C. §§ 3584(b) and 3553(a), is defied by logic, and is

otherwise inimical to the policies behind punishment of offenders.

The government acknowledges that, when necessary to fashion an

appropriate sentence, this Court has discretion to decide that a downward departure

should be granted to a defendant who has previously served a state sentence on

<u>related</u> charges.  Such a downward departure is premised on the theory that the

defendant, through fortuitous delay in the federal indictment, has lost the

opportunity to serve his sentence concurrently.  <u>United States v. Sanchez-</u>

Rodriguez, 161 F.3d 556,561 (9th Cir. 1998). It is clear, of course, that this is an exercise of discretion by the District Court, not a matter of entitlement for the defendant. United States v. Defterios, 343 F.3d 1020 (9th Cir. 2003) (reversing a District Court's decision to depart downward where court suggested that it was bound to do so).

As the Court of Appeals pointed out in Defterios, "[F]ortuitous delay in an indictment may be treated as a reason to soften a sentence. We do not categorically rule out such a basis for departure." Id. at 1022. Nevertheless, the Court emphasized that "[s]entencing is a case-by-case matter," and the District Court must exercise its discretion to fashion an appropriate sentence under the circumstances. Id. See also, USSG § 5G1.3 Application Note 7 (when a downward departure is granted for this reason, it "should be fashioned to achieve a reasonable punishment for the instant offense.").

A key factor here is whether this Court would have exercised its discretion under section 3584(a) so that the defendant's federal sentence would be served concurrently or consecutively to the state sentence, had he been convicted in federal court earlier. Defterios, 343 F.3d at 1022. In that circumstance, the Court would have had the discretion to order that the federal sentence be served concurrently with or consecutive to the state sentence. 18 U.S.C. § 3584. That

exercise of discretion, in turn, is governed by the factors in 18 U.S.C. § 3553(a).

In this case, the weight of those factors make it clear that this Court should decline

to depart downward, because consecutive sentences would best serve the interests

of justice.  The relevant factors that justify a consecutive sentence in the case at bar

are as follows:

- The violent nature and egregious circumstances of this offense, and the violent history and anti-social characteristics of the defendant.  18 U.S.C. § 3553(a)(1).

- The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. Section 3553(a)(2)(A).

- The need for the sentence to afford adequate deterrence to criminal conduct. Section 3553(a)(2)(B).

- The need for the sentence to protect the public from further crimes of the defendant.  Section 3553(a)(2)(C).

- The need for the sentence to provide the defendant with needed correctional treatment.  Section 3553(a)(2)(D).

- The kinds of sentence and the sentencing range established for the offense by the Guidelines (here far in excess of the available maximum sentence).

It is important to note that the defendant was out on bail pending appeal of a

1997 weapons conviction when he committed the instant offense; his bail was

revoked when he committed the instant offense, which was originally charged by

the State of Alaska.[4]  Accordingly, he remained incarcerated on the 1997 weapons

case until February 2003, when he was released after the case was reversed, he was

re-tried twice, and his second trial resulted in an acquittal.  While he was

incarcerated awaiting re-trial, he was also serving a two-year sentence for his

marijuana related sentence imposed in March 1999 (also stemming from the 1997

incident).  While the defendant originally was sentenced to serve a ten year period

of probation on the marijuana conviction, that condition was eliminated when the

defendant was acquitted of the weapons charge in February 2003.  See Addendum

to the PSR, p. 2 ("Because Maness has served all of his imposed and suspended

time on Counts IV and V, he is not on probation.")  Therefore, the defendant has

already received at least one benefit simply for being incarcerated pending re-trial

of his 1997 weapons case, as otherwise his criminal history category would have

been higher.

In essence, crediting the defendant's 21 month period of incarceration on an

unrelated case would be conferring upon the defendant a three-for-one benefit: he

received credit for the time on his marijuana conviction, as well as the time he

spent awaiting trial on the 1997 weapons charge (which would have been credited

had he been convicted), and then he would get credit for time served on the 2001

---

[4]     The state charges stemming from the instant case were dismissed on a technicality in February 2002.

weapons charge. This Court should not "pick up the tab" for time the defendant

spent in jail serving a separate  state sentence and awaiting a state re-trial on

separate state charges.[5]

Considering the 21 month period before the defendant was indicted on

federal charges a sentencing mitigator is tantamount to rewarding the defendant for

committing this crime while he was out on bail pending appeal of another case.

Such a reward would serve to encourage offenders to commit crimes while they are

at liberty pending adjudication of other criminal matters.  Certainly this is contrary

to the goal of the criminal justice system for deterring violators, especially ones

such as the defendant, who the Court has termed "a worst offender who deserved

the maximum sentence."   The defendant's conduct is an aggravating sentencing

factor – not a mitigating one.  See United States Sentencing Memorandum, pp. 13-

17.

## IV.    Conclusion

The Court's original guidelines calculation was carefully considered and

correct.   Recalculation, as well as re-sentencing, is unwarranted as the 120 month

---

[5]       Perhaps if the state charges stemming from the 2001 incident were the only charges for which the defendant was incarcerated in state court, the defendant would have been entitled to a downward departure based on fortuitous charging delay.  However, the fact that he was serving time on another case while awaiting re-trial on his 1997 weapons case eviscerates the grounds for this departure.

sentence was reasonable, justified, and appropriate.  However, if the Court decides

that resentencing is necessary, then it must hold a full-blown resentencing hearing,

at which point the parties can address additional guideline arguments, sentencing

factors, and victims given an opportunity to be heard.

RESPECTFULLY submitted this 29th day of August, 2006, at Anchorage,

Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: Frank.Russo@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on August 29, 2006,
a copy of the foregoing GOVERNMENT'S
MOTION TO RECONSIDER ORDER
MODIFYING SENTENCE was served
electronically on Kevin McCoy.

s/ Frank V. Russo