NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
THOMAS C. BRADLEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Frank.Russo@usdoj.gov
Thomas.Bradley@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>BRET F. MANESS, )<br><br>Defendant. ) | No. 3:03-cr-00077-RRB<br><br>**UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO MOTION TO RECONSIDER ORDER MODIFYING SENTENCE** |

COMES NOW, Plaintiff United States of America, and hereby briefly

replies to one issue raised in the defendant's responses to the United States motion

for reconsideration, filed at dockets 165-1 and 166.  Therein, the defendant

continues to insist that the Norinco MAK-90 assault rifle was legal to possess

because it was imported before the 1994 assault weapons ban.  This argument

misses the point.  The issue is not whether <u>someone</u> could have possessed this

weapon legally or purchased this weapon legally.  Rather, the question is whether <u>a</u>

<u>felon</u> who possessed this weapon is subject to an enhanced base offense level of 20

pursuant to U.S.S.G. § 2K2.1(a)(4)(B).  The answer to this question is yes.

Under the Sentencing Guidelines, the base offense level for convictions of a

felon in possession of firearms is established, in part, based on the type of firearm

involved.  Logically, the more potentially dangerous the weapon, the more

dangerous the weapon is in the hands of a felon.  The Guidelines recognize this

fact in USSG §2K2.1, which, provides in pertinent part at subpart (a)(4)(B) that the

base level is 20 if "the offense involved a firearm described in . . . 18 U.S.C. §

921(a)(30)."

Section 921(a)(30) in turn provides, in relevant part:

> The term 'semiautomatic assault weapon' means –
> (A)   any of the firearms, or copies or duplicates of the firearms in
> any caliber, known as – (i) Norinco, Mitchell, and Poly
> Technologies Avtomat Kalashnikovs (all models) . . . .
> (B)   a semiautomatic rifle that has an ability to accept a detachable
> magazine and has at least two of –
> (i)    a folding or telescoping stock;
> (ii)   a pistol grip that protrudes conspicuously beneath the
> action of the weapon;
> (iii)  a bayonet mount;
> (iv)   a grenade launcher;
> . . . .

Maness's Norinco MAK-90 qualifies as a semiautomatic assault weapon on both of the above grounds. First, as ATF Agent Houde testified, Maness's weapon was a Norinco "AK", or Avtomat Kalashnikov type weapon. Secondly, Agent Houde testified that Maness's weapon had the ability to accept a detachable magazine, had a folding metal stock, and a pistol grip that allowed it to be fired with one hand. See United States Motion for Reconsideration, pp. 13-14; Ex. A. Accordingly, pursuant to 18 U.S.C. § 921(a)(30)(A) and (B) Maness's weapon was a semiautomatic assault weapon.

Next, one looks to the Guideline application notes to determine if there are any further exceptions to the definition of semiautomatic assault weapon. Application Note 2 to the Guideline further limits the definition of a semiautomatic assault weapon: "A 'firearm described in 18 U.S.C. § 921(a)(30)' (pertaining to semiautomatic assault weapons) does not include a weapon exempted under the provisions of 18 U.S.C. § 922(v)(3). Section 922(v)(3) provides certain exemptions for firearms that are considered less dangerous than typical assault weapons:

(A)     any of the firearms, or replicas or duplicates of the firearms, specified in Appendix A to this section, as such firearms were manufactured on October 1, 1993;

(B)     any firearm that –
(i)     is manually operated by bolt, pump, lever or slide action;

U S v. Maness
3:03-cr-00077-RRB                                    3

      (ii)    has been rendered permanently inoperable; or

      (iii)   is an antique firearm;

(C)    any firearm that cannot hold more than 5 rounds of ammunition in a fixed or detachable magazine.

The fact that a firearm is not listed in Appendix A shall not be construed to mean that paragraph (1) [banning its possession] applies to such firearm.  No firearm exempted by this subsection may be deleted from Appendix A so long as this subsection is in effect.

The Norinco MAK-90 used by the defendant is not found in Appendix A, is fully operational, is not an antique, is capable of firing more than five rounds; thus, the exemptions in subpart (v)(3) do not apply and the base level is 20.  This ends the inquiry.

Nevertheless, the defendant continues to confuse the issue by citation to cases that do not involve possession of assault weapons by felons.  United States v. O'Malley, 332 F.3d 361 (6th Cir. 2003) is such a case.  More importantly, this decision does not stand for the proposition that the defendant advances, but instead addresses whether the relevant conduct of a co-conspirator was reasonably foreseeable pursuant to U.S.S.G. § 1B1.3(a)(1)(B).  This is clear when one reads the original Sixth Circuit opinion in O'Malley, found at 265 F.3d 353 (6th Cir. 2001).  O'Malley was the getaway car driver of a burglary of two gun shops, for which she and her accomplices were charged and convicted of violations of 18 U.S.C. 922(u), theft of firearms from a licensed dealer, as well as conspiring to do

so.  Id. at 354.  The issue in the original opinion was whether the O'Malley could be held accountable for her accomplices theft of a Norinco Kalashnikav weapon from a licensed firearm dealer.  However, the parties, as well as the district court and Sixth Circuit, were all under the mistaken impression that the Norinco was per se an illegal assault weapon.  Id. at 356  Therefore, the issue was whether it was foreseeable to O'Malley that a licensed firearm dealer would have an illegal assault weapon in its inventory.  Id.

The subsequent opinion, cited by the defendant, simply recognized that, if the Norinco had been manufactured or imported before the assault weapons ban, it would not have been illegal to possess or sell [unless, of course, if one was a prohibited person.]  332 F.3d at 363.  This much was conceded by the United States in the opinion.  Id.  The court simply issued the subsequent opinion to correct the incorrect statements in its previous opinion: "Thus, any reference in our prior opinion, declaring that it is unlawful for a person to transfer or possess a semi-automatic assault weapon, is vacated, to the extent that it is inconsistent with this opinion."  Id.  The court never decided what was the appropriate base offense level for the defendant, but rather remanded to the district court.  Id.

Of course, this is completely different from the situation in the case at bar, which involves not foreseeability, but rather calculation of the base offense level of

U S v. Maness
3:03-cr-00077-RRB                          5

a prohibited person possessing an assault weapon.   To account for this danger, the

Guidelines understandably provide for an escalated tier of base offense levels,

depending in part on the danger and risk of the particular kind of firearms

possessed by the felon.  This stems from the logical conclusion that possession of a

hunting rifle, for example, does not warrant as serious punishment as possession of

a semiautomatic assault weapon.  It does not – and should not – matter when a

firearm is purchased or imported if it is possessed by a prohibited person.   So long

as the weapon has the offending characteristics of an assault weapon, the

dangerousness of that weapon in the hands of a felon is the same irrespective of

when the weapon was imported or puchased.   Maness is a felon, and unlike the

cases cited by the defendant, expert testimony has established that the Norinco

MAK-90 qualifies as a semiautomatic assault weapon.  His base offense level is

20.

Accordingly, the Court's original Guideline calculation was correct, and a

resentencing hearing is unnecessary.

//


//


U S v. Maness
3:03-cr-00077-RRB                    6

RESPECTFULLY submitted this 26th day of September, 2006, at

Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: Frank.Russo@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2006,
a copy of the foregoing GOVERNMENT'S
REPLY TO DEFENDANT'S RESPONSE
TO MOTION TO RECONSIDER ORDER
MODIFYING SENTENCE was served
electronically on Kevin McCoy.

s/ Frank V. Russo