**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* v. ROBERT F. COMBS, *Defendant-Appellant.* | No. 05-30486 D.C. No. CR-02-00108-JKS/ AHB OPINION |

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, Chief District Judge, Presiding

Argued and Submitted
July 26, 2006—Anchorage, Alaska

Filed December 18, 2006

Before: Alex Kozinski, Marsha S. Berzon and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Kozinski;
Dissent by Judge Berzon

19513

## COUNSEL

Lance C. Wells, Law Offices of Lance C. Wells, P.C., Anchorage, Alaska, for the defendant-appellant.

Deborah M. Smith, Acting United States Attorney for the District of Alaska, Anchorage, Alaska; Jo Ann Farrington, Assistant United States Attorney, Anchorage, Alaska, for the plaintiff-appellee.

## OPINION

KOZINSKI, Circuit Judge:

We consider two questions left unanswered by *United States* v. *Ameline*, 409 F.3d 1073 (9th Cir. 2005): (1) By what standard do we review a district court's determination that a defendant's sentence would not have been materially different, had it known that the Guidelines were advisory rather than mandatory? And, (2) may a defendant raise new claims of error during the course of an *Ameline* remand?

### Facts

Defendant was sentenced during the interregnum between *Blakely* v. *Washington*, 542 U.S. 296 (2004), and *United States* v. *Booker*, 543 U.S. 220 (2005), and the tortured posture of his case illustrates the difficulties the courts of appeals have faced in reviewing such sentences. Defendant was convicted on four counts relating to his involvement in a methamphetamine operation and sentenced to 168 months, a sentence at the low end of the Guidelines range. He appealed on the

sole ground that the district court erred in denying his motion
to suppress certain evidence. We affirmed in an opinion filed
the day before *Booker* was handed down. *See United States
v. Combs*, 394 F.3d 739 (9th Cir. 2005). Defendant petitioned
for rehearing, claiming *Booker* error because the district judge
had acted under the misapprehension that the Guidelines were
mandatory rather than advisory. Because defendant had not
raised a sentencing claim below, this belated claim could be
reviewed—if at all—only for plain error. We therefore
amended our opinion to include a remand to the district court
for a determination of whether the error was prejudicial, as
directed by *Ameline*. *See United States* v. *Combs*, 412 F.3d
1020 (9th Cir. 2005). At no time during his first appeal did
defendant challenge the reasonableness of his sentence. Our
ruling today applies only to defendants in Combs's particular
situation.

On remand, the district court invited the parties to file
memoranda addressing whether resentencing was warranted.
Combs argued that the pre-*Booker* sentencing statute had pre-
cluded the district judge from ordering the sentence that
would best serve the policy goals of 18 U.S.C. § 3553(a), and
asked to be resentenced. After reviewing the parties' submis-
sions, the judge concluded that "it does not appear that advi-
sory guidelines would have resulted in a materially different
sentence than Combs received under the mandatory guide-
lines."

Defendant also first raised what we will call the "new
claims"—that the district court's use of the preponderance
standard in finding facts that enhanced the Guidelines calcula-
tion violated his due process rights; and that the district
court's reliance on hearsay evidence at sentencing violated his
Confrontation Clause rights. The district court questioned
whether the new claims were properly presented to it, but,
assuming they were, rejected both.

On appeal, defendant challenges the district court's rulings
on the new claims as well as its determination that defen-

dant's sentence would have been the same under an advisory Guidelines system.

## Analysis

1. We first consider whether the district court erred in refusing to resentence defendant after finding that the sentence imposed during the original sentencing proceeding would not have differed materially, had the judge known the Guidelines were advisory. Defendant claims that the judge failed to consider each of the section 3553(a) factors, in particular sections 3553(a)(1), which directs the district court to consider the "history and characteristics of the defendant," and 3553(a)(2)(D), which outlines the goal of "provid[ing] the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Defendant argues that the district court ignored these provisions by failing to take into account information regarding his educational and vocational skills, mental and emotional conditions, drug and alcohol dependence, and lack of guidance as a youth.

[1] This argument requires us to consider an issue of first impression: By what standard do we review a district court's determination, made during the course of an *Ameline* remand, that it would have imposed the same sentence under an advisory Guidelines system? The only guidance *Ameline* gives is that, when the district judge determines that defendant's sentence would not have been materially different, "the original sentence will stand, subject to appellate review for reasonableness." 409 F.3d at 1074-75.

[2] We read the first part of this statement—that the sentence "will stand"—as meaning that the district court's determination of prejudice is effectively unreviewable. Insofar as this inquiry relates to the district judge's representation as to his own state of mind, such absolute deference is inevitable. However, *Ameline* goes on to say that, even where the district

judge decides to stick with the original sentence on remand, we review that sentence for "reasonableness." *Id.* at 1074-75. This suggests there is something for us to review even after the judge has found that the sentence he imposed pre-*Booker* would not differ materially from the sentence he would have imposed under a post-*Booker* regime. We do not read this to be the same as the reasonableness review we conduct on post-*Booker* sentences. *See, e.g., United States* v. *Mohamed*, 459 F.3d 979, 984-85 (9th Cir. 2006). Such full-blown reasonableness review presupposes that the judge sentenced defendant under a post-*Booker* regime, where the judge must take into account all the factors enumerated in 18 U.S.C. § 3553(a). A *limited Ameline* remand—a term *Ameline* uses no fewer than 25 times—does not contemplate that the district judge will engage in a full post-*Booker* resentencing, *unless* he first determines that the sentence would have been materially different under an advisory Guidelines system. Where the district judge determines that he would have imposed the same sentence, defendant's plain error claim will have failed for lack of prejudice, and defendant would not seem entitled to review of his sentence at all.

[3] Somewhat incongruously, however, *Ameline* allows for appeal of the re-imposed sentence and instructs us to review that sentence for "reasonableness." And, indeed, there is an issue we can consider that bears on the reasonableness of the sentence: Whether the district judge properly understood the full scope of his discretion in a post-*Booker* world. After all, the district judge's determination that he would have imposed the same sentence after *Booker* is only meaningful if he understood his powers and responsibilities under an advisory Guidelines system. A more demanding inquiry would turn every *Ameline* remand into a full-blown resentencing, and would thus be contrary to *Ameline*'s central holding that defendants whose sentences are being reviewed for plain error are entitled only to a limited remand.

[4] The record here discloses that the judge understood his post-*Booker* authority to impose a non-Guidelines sentence

and that his ultimate determination was therefore not infected by ignorance or a misapprehension of the law. As we instructed in *Ameline*, the district judge gave the parties the opportunity to present argument both as to the scope of his post-*Booker* sentencing discretion and as to whether the facts of defendant's case warranted a sentence outside the Guidelines range. *See Ameline*, 409 F.3d at 1085; *United States* v. *Montgomery*, 462 F.3d 1067, 1072 (9th Cir. 2006). The judge then issued an order, reimposing the original sentence, which concluded as follows: "[I]t does not appear that advisory guidelines would have resulted in a materially different sentence than Combs received under the mandatory guidelines." While the district court used the judicial passive voice, not the active first person that the dissent would prefer, this is a matter of style, not substance. The district judge clearly indicated that he would not have imposed a materially different sentence under an advisory Guidelines system. His decision to stick with the original sentence was therefore reasonable as we understand *Ameline* to have used that term.

[5] **2.** We now turn to whether the district court had authority to consider defendant's new claims. As already noted, defendant appeared before the district court on a limited remand—a remand designed to answer a single question: Whether the district judge would have given defendant a materially different sentence under an advisory Guidelines system. This limited remand gave the district judge no authority to re-sentence defendant unless he first answered the question posed to him in the affirmative. Once the judge answered the question in the negative, his task was complete. The limited remand procedure left no room for the district judge to consider new objections to the original sentence—objections defendant could have raised the first time around, but failed to do so. Because the district judge failed to modify his original sentence in light of these new objections, he acted precisely as *Ameline* contemplated and we must affirm.

**AFFIRMED.**

BERZON, Circuit Judge, dissenting in part:

I respectfully dissent. The majority's peculiar interpretation of the word "reasonableness" not only defies its common usage in the English language, but more importantly, runs contrary to what this court decided, sitting en banc, in *United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (en banc). Because our intention in *Ameline* was to give all defendants, even those like Combs, the same reasonableness review we conduct on post-*Booker* sentences — an intention borne out by the language used repeatedly in *Ameline* itself — I disagree with the majority's conclusion that Combs is entitled only to the most anemic of appellate reviews: an inquiry solely into "[w]hether the district judge properly understood the full scope of his discretion in a post-*Booker* world." Furthermore, because the district judge in this case failed even that test — using language when reimposing Combs's sentence that indicates that he failed to appreciate the nature of his post-*Booker* sentencing authority — I would vacate Combs's sentence and remand to the district court so that it may properly comply with procedures set forth in *Ameline*.[1]

## I.

In *Ameline*, we held that in cases where "we are faced with an unpreserved *Booker* error that may have affected a defendant's substantial rights, and the record is insufficiently clear to conduct a complete plain error analysis," a panel should remand the matter to the district court for a limited purpose: to "ascertain[ ] whether the sentence imposed would have been materially different had the district court known that the sentencing guidelines were advisory." *Id.* at 1074. If, during the course of that remand, "the district court responds in the negative, the original sentence will stand, *subject to appellate review for reasonableness*." *Id.* at 1074-75 (emphasis added).

---

[1] I concur in that portion of the majority opinion holding that, in a limited *Ameline* remand, the district judge is not "to consider . . . objections defendant could have raised the first time around, but failed to do so."

There is no indication in *Ameline* that this subsequent reasonableness review was intended to be anything less than the reasonableness review generally afforded to post-*Booker* sentences. *See generally United States v. Cantrell*, 433 F.3d 1269, 1279-80 (9th Cir. 2006). To the contrary. *Ameline* repeatedly and specifically cites to *United States v. Booker,* 543 U.S. 220, 268 (2005), and its "reasonableness standard," in explicating what the appellate panel must do once a district court reimposes a sentence, having held that it would not have imposed a different sentence had it known the Guidelines were advisory. *See Ameline*, 409 F.3d at 1079 (holding that the reimposed sentence "will stand, provided it is reasonable," and citing to *Booker,* 543 U.S. at 268, for the proposition that "both the Sixth Amendment ruling and the remedial interpretation of the Reform Act, including the reasonableness standard, apply to all cases pending on direct review"); *id.* at 1085 (emphasis added) (explaining that, following remand, "the defendant and the government have the right to appeal to this court the district court's decision, including a challenge to the sentence *based on the reasonableness standard established in Booker*," and citing *Booker*, 543 U.S. at 261-62).

That this is the standard of review *Ameline* intended after a limited remand is corroborated by the fact that the same standard of review was adopted by other circuits whose opinions we explicitly relied on when deciding *Ameline*. In outlining its version of the limited *Ameline* remand process, the Seventh Circuit, for example, explained that if the district judge reimposes his original sentence, "we will affirm the original sentence against a plain-error challenge *provided that the sentence is reasonable, the standard of appellate review prescribed by* Booker." *United States v. Paladino*, 401 F.3d 471, 484 (7th Cir.) (emphasis added) (citing *Booker*, 543 U.S. at 261), *cert. denied sub nom. Peyton v. United States*, 126 S. Ct. 106 (2005). Significantly, the Seventh Circuit immediately added: "The proviso is important; the mere reimposition of the original sentence does not insulate it from appellate review under the new standard." *Id.; see also United States v.*

*Crosby*, 397 F.3d 103, 114-16 (2d Cir. 2005) (detailing the extent of the "reasonableness" review to be done, even if the sentencing error is only "available for review under plain error analysis"), *abrogation on other grounds recognized by United States v. Lake*, 419 F.3d 111, 113 n.2 (2d Cir. 2005).

To be sure, as the majority notes, there is one distinction between Combs's appeal and the one brought by Ameline. Specifically, while Ameline did not initially challenge the constitutionality of the Guidelines in the district court or in his opening brief, he did challenge other aspects of his original sentence on appeal. *See Ameline*, 409 F.3d at 1076; s*ee also Paladino*, 401 F.3d at 479-81 (describing the sentencing claims raised by defendants on appeal); *Crosby*, 397 F.3d at 119 (describing the sentencing claim Crosby raised on appeal). Combs, on the other hand, did neither.[2] Arguably, then, he is not entitled to a windfall — in the guise of a full reasonableness review of his sentence — because he never questioned his sentence in the first instance. *Ameline*, however, never made this distinction, and it is, therefore, not one that we can draw. Instead, under *Ameline*, defendants like Combs are entitled to the same reasonableness review as defendants who *had* from the outset challenged their sentences on appeal.

I must therefore dissent.

## II.

I also dissent from the majority's conclusion that the district judge in this case properly understood the full scope of

---

[2]Combs's original appeal challenged only his conviction. *See United States v. Combs*, 394 F.3d 739 (9th Cir. 2005). One day after the Ninth Circuit issued its original decision in *Combs*, the Supreme Court decided *Booker*. This court subsequently granted Combs a limited remand, pursuant to *Ameline. See United States v. Combs*, 412 F.3d 1020 (9th Cir. 2005) (amending prior opinion).

his post-*Booker* discretion. The language used by the district court when reimposing Combs's sentence leads to precisely the opposite conclusion.

Again, I return to the language of *Ameline*. There, we held that when an appellate panel is "faced with an unpreserved *Booker* error that may have affected a defendant's substantial rights, and the record is insufficiently clear to conduct a complete plain error analysis, a limited remand to the district court is appropriate for the purpose of ascertaining whether the sentence imposed would have been materially different had *the district court* known that the sentencing guidelines were advisory." 409 F.3d at 1074 (emphasis added). This inquiry is inherently subjective. It requires that the district judge ask whether *he* would have imposed a different sentence at the time of the original sentencing had he sentenced the defendant under a post-*Booker* advisory Guidelines regime. *See id.* at 1083; *id.* at 1085 (noting that, on remand, "the district court judge determines [whether] the sentence imposed would not have differed materially had *he* been aware that the Guidelines were advisory" (emphasis added)); *see also United States v. Lence*, 466 F.3d 721, 725 (9th Cir. 2006) (holding that a criminal defendant who preserved his Sixth Amendment error and is thus entitled to a full resentencing should be resentenced by his original judge because "[a] defendant who preserves a claim of error should receive no less of a chance to benefit from [a] subjective assessment than a defendant who fails to preserve a claim of error and obtains a limited *Ameline* remand").

The district judge who resentenced Combs failed to conduct the *Ameline* remand from this properly subjective vantage point. In reimposing Combs's sentence, the judge did not conclude that *he* would not have imposed a materially different sentence had *he* known the sentencing guidelines were advisory. Instead, he found that "[t]he distinction between mandatory and advisory guidelines would not have *necessitated* a materially different sentence in this case." (Emphasis

UNITED STATES v. COMBS          19525

added.) The significance of this locution is not simply a matter of an inartful or careless choice of words, or the use of the passive rather than active voice. Instead, like the language quoted by the majority, the language quoted above indicates that the district judge approached his post-*Booker* sentencing task from as mechanical a perspective as he did pre-*Booker*, oblivious to the contradiction inherent in his conclusion that an *advisory* system did not *necessitate* any particular result at all. In short, unlike the majority, I read the district judge's words, taken as a whole, as indicating that he did not understand "the full scope of his discretion in a post-*Booker* world."

For all of the above reasons, I dissent.